**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street, Suite 100
Las Vegas, Nevada 89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Proposed* Attorneys for Debtor

*Electronically filed on: January 22nd, 2018*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

KINGMAN FARMS VENTURES, LLC,
a Nevada limited liability company,

                    Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 18-10180-LED

CHAPTER 11

Hearing Date: OST Requested

Hearing Time: OST Requested

## MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO AN AGREEMENT TO GRANT AN EASEMENT OVER DEBTOR'S REAL PROPERTY

Kingman Farms Ventures, LLC ("Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), hereby files this motion (the "Motion") for an order, pursuant to sections 105(a) and 363(b) of Title 11 of the United States Code, 11 U.S.C. §§ 10-1152 (as amended, the "Bankruptcy Code"), authorizing the Debtor to enter into an agreement to grant an easement over Debtor's real property.

This Motion is based upon the following memorandum of points and authorities, the *Declaration of James Rhodes* (the "Rhodes Declaration"), filed concurrently herewith, the

1

papers and pleadings on file with the Court in the above-captioned case, and any argument of counsel the Court may entertain at the hearing.

DATED this 22nd day of January, 2018.

**GHANDI DEETER BLACKHAM**

By  /s/ Nedda Ghandi
           Nedda Ghandi, Esq.
           Nevada Bar No. 11137
           725 South 8th Street, Suite 100
           Las Vegas, Nevada 89101
           *Proposed* Attorneys for Debtor

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Debtor Kingman Farms Ventures, LLC ("KFV") is a Nevada limited liability company, formed in 2012. Debtor owns multiple parcels of land in Kingman, Arizona. Debtor is one of several named defendants in a lawsuit in the Superior Court of Arizona, Mohave, Case No. S8015-CV2017-00857 ("Arizona Lawsuit"). The Plaintiff, Kingman Farms Ventures III ("KFVIII"), is the owner of a parcel of land which it contends is landlocked and in close proximity to Debtor's property. On or about October 20, 2017, KFVIII brought the Arizona Lawsuit seeking an easement by necessity over property owned by Debtor, as well as over property owned by third parties. KFVIII contends that it may only access its property by entering through Debtor's property as well as others' property, as seen on the map attached hereto as **Exhibit "A"**.

A settlement has been reached allowing KFVIII access through Debtor's property, namely the Non-Exclusive Perpetual Mutual Access Easement Agreement ("Easement

2

Agreement"), a true and correct copy of which is attached hereto as **Exhibit "B"**. By this Motion, Debtor hereby seeks permission under Section 363(b) of the Bankruptcy Code to enter into the Easement Agreement. Time is of the essence and Debtor must have authority to enter the Easement Agreement no later than February 6, 2018 for the following reasons.

There are other pending matters that require urgency in having this Court approve the Debtor's entry into the Easement Agreement. Specifically, the Debtor must have authority to enter into the Easement Agreement on or before February 6, 2018 in order for the Easement Agreement to be successful. This is due to a deadline imposed on the other parties to the Easement Agreement pursuant to a separate bankruptcy matter, namely *In re Yucca Land Company, LLC*, Chapter 11 Case No. 2:17-bk-16042-led (the "Yucca Bankruptcy Case"), also pending before this Court. The success of the Easement Agreement is contingent upon the ability of all parties to execute the Easement Agreement on or before February 6, 2018. Therefore, the Debtor requires authority to enter into the Easement Agreement immediately.

## II.   JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a) and 363(b).

2.      On January 16, 2018 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is operating its businesses and managing its affairs as debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

///

3

3.      No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

### III.    FACTUAL BACKGROUND

**A.      The Arizona Lawsuit and Easement Agreement.**

On or about October 20, 2017, KFVIII filed the Arizona Lawsuit in which Debtor is a named defendant, along with other entities owning land in close proximity to Plaintiff KFVIII's allegedly landlocked parcel, namely EB Acquisitions, LLC ("EB") and Yucca Land Company, LLC ("Yucca"), Debtor in the aforementioned Yucca Bankruptcy Case. See Rhodes Declaration, ¶ 4-5.

Yucca's real property is encumbered by a lien in favor of its secured lender, Sun Pacific Marketing Corporation ("Sun Pacific"). Yucca has reached a settlement (the Yucca/Sun Pacific Settlement") with Sun Pacific, the terms of which are embodied in the Yucca Plan of Reorganization. The Yucca/Sun Pacific Settlement provides that if an order confirming the Yucca Plan is not entered by February 7, 2018, Sun Pacific will be entitled to automatic relief from stay to foreclose on all of Yucca's Properties. See Rhodes Declaration, ¶ 6.

The Yucca Plan provides that Debtor, EB, Sun Pacific, and others will enter into a non-exclusive mutual access easement agreement to grant each other, for the benefit of and as a burden upon their respective land, a perpetual, non-exclusive easement and right of way upon, over, across and under a thirty (30)- to sixty-five (65)-foot-wide strip of the respective parties' land (the "Easement Agreement"). See Rhodes Declaration, ¶ 7. Debtor's granting of and participation in easements such as this is not uncommon, as such easements are regularly given in the ordinary course of business in the development of real property in Arizona, and

4

elsewhere. See Rhodes Declaration, ¶ 8. Further, Debtor's secured lender, Opal Investments ("Opal"), has agreed to the request for subordination in order to effectuate the Easement Agreement. It is anticipated that Opal will not oppose this Motion.

The Yucca/Sun Pacific Settlement provides that if an order confirming the Yucca Plan is not entered by February 7, 2018, Sun Pacific will be entitled to automatic relief from stay to foreclose on all of Yucca's Properties. See Rhodes Declaration, ¶ 7. In sum, Debtor requests entry of an Order of the Court authorizing Debtor to enter into the Easement Agreement.

## IV.    LEGAL ARGUMENT

Section 363(b)(1) of the Bankruptcy Code governs the use of property of a bankruptcy estate, and provides, in pertinent part, as follows: "[t]he trustee, after notice and hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

When the trustee (or debtor in possession) seeks approval of an out of the ordinary course transaction under section 363(b)(1), "the bankruptcy court reviews the trustee's (or debtor in possession's) business judgment to determine independently whether the judgment is a reasonable one." 3 Collier on Bankruptcy ¶ 363.02[4] (Matthew Bender & Co.,16th ed. 2017 rev.).

The debtor in possession must simply demonstrate "some articulated business justification for the transaction." In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (internal quotation marks omitted). "Ordinarily, the position of the [debtor in possession] is afforded deference, particularly where business judgment is entailed in the analysis . . . ." Fridman v. Anderson (In re Fridman), No. BAP CC-15-1151-FKIKU, 2016 WL 3961303, at *8 (B.A.P. 9th Cir. July 15, 2016) (internal quotation marks omitted). Hence,

"[t]he court should not substitute its judgment for the [debtor in possession's] but should determine only whether the [debtor in possession's] judgment was reasonable and whether a sound business justification exists supporting the [use] and its terms." 3 Collier ¶ 363.02[4].

Here, Debtor's decision to enter into the Easement Agreement with KFVIII is sound and well justified. Debtor is a named defendant the Arizona Lawsuit, where KFVIII is the Plaintiff. KFVIII's land is landlocked and an easement through necessity is being sought. All parties to the Arizona Lawsuit have reached an agreement to grant a non-exclusive perpetual mutual access easement.  Thus, the Easement Agreement will resolve the claim of KFVIII against Debtor in this bankruptcy case and will save the Debtor the cost of litigation over the issue. Additionally, Debtor has successfully negotiated an alternate route for the easement, rather than the initial route sought by KFVIII. Debtor believes that the route agreed upon in the Easement Agreement is a superior route in favor of Debtor inasmuch as the route lies within an existing roadway utilized by Debtor for over three (3) years. Further, Debtor's secured lender, Opal Investments, has agreed to subordinate in order for the Easement Agreement to be effectuated and recorded.

For the reasons and based on the authorities set forth above, the Debtor submits that it should be authorized to enter into the Easement Agreement as a sound exercise of its business judgment. See Rhodes Declaration, ¶ 10. Further, in the case at hand, good cause exists for the Court to waive any and all stays of the effectiveness of an order granting this Motion, such that any such order is effective immediately upon its entry for several reasons.

First, the Motion seeks Debtor's authorization to enter into the Easement Agreement, resulting in the full resolution of KFVIII claim against Debtor based on the Arizona Lawsuit. The resolution of the KFVIII claim is a substantial and significant relief to the estate as it shall

save the estate's time and financial resources in defending the lawsuit, and provides a suitable solution for all parties to the easement dispute. Second, the Motion presents specific circumstances that necessitate the Order being immediately effective in order for Debtor to gain the advantages presented by the Easement Agreement, which are contingent upon the Easement Agreement being entered into on or before February 7, 2018 due to the other parties' to the Easement Agreement's deadlines in the Yucca Bankruptcy Case; thus, all parties need to know as soon as possible that Debtor is fully authorized to enter into the Easement Agreement before February 7, 2018.

## V.    CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an Order in the form attached hereto as **Exhibit "C"** (a) authorizing the Debtor to enter into the Easement Agreement; and (b) granting such other relief as the Court deems necessary, just, and proper.

Dated this 22nd day of January, 2018.


                                        **GHANDI DEETER BLACKHAM**

                                        By  /s/ Nedda Ghandi
                                            Nedda Ghandi, Esq.
                                            Nevada Bar No. 11137
                                            725 South 8th Street, Suite 100
                                            Las Vegas, Nevada 89101
                                            *Proposed* Attorney for Debtor

**EXHIBIT "A"**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# Easement Schedule Route Map



**EXHIBIT "B"**

**Recording Requested By:**
SUN PACIFIC MARKETING COOPERATIVE, INC.

**When recorded mail to:**
SUN PACIFIC MARKETING COOPERATIVE, INC.
Attn: Adam Smith
1095 East Green Street
Pasadena, CA 91106

## NON-EXCLUSIVE PERPETUAL MUTUAL
## ACCESS EASEMENT AGREEMENT

This Non-Exclusive Perpetual Mutual Access Easement Agreement (the "*Easement Agreement*") is by and among SUN PACIFIC MARKETING COOPERATIVE, INC., a California corporation having an address at 1095 East Green Street, Pasadena, California 91106 ("*Sun Pacific*"), KINGMAN FARMS VENTURES, LLC, a Nevada limited liability company having an address at 8912 Spanish Ridge Ave., Suite 200, Las Vegas, Nevada 89148 ("*Kingman Farms Ventures*"), EB ACQUISITIONS, LLC, a Nevada limited liability company having an address at 8912 Spanish Ridge Ave., Suite 200, Las Vegas, Nevada 89148 ("*EB Acquisitions*"), and KINGMAN FARMS VENTURES III, LLC, a Nevada limited liability company having an address at 2360 Corporate Circle, Suite 330, Henderson, Nevada 89074 ("*Kingman Farms Ventures III*"). Sun Pacific, Kingman Farms Ventures, EB Acquisitions and Kingman Farms Ventures III are each individually referred to as a "*Party*" and collectively as the "*Parties*" to this Easement Agreement.

### RECITALS

A.     Sun Pacific owns fee simple title to the following described real property in Mohave County, State of Arizona (hereinafter, "*Sun Pacific's Land*"):

1. The Southwest Quarter of Section 15, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-041**;
2. The Northwest Quarter of Section 15, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-042**;
3. The South Half of the Northeast Quarter of Section 15, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-012**;
4. The Southeast Quarter of Section 15, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-012**; and

1

ACTIVE\52812316.v6-1/19/18

      5.  All of Section 23, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-062**.

    B.    Kingman Farms Ventures owns fee simple title to the following described real property in Mohave County, State of Arizona (hereinafter, "*Kingman Farms Ventures' Land*"):

      1.  The West Half of Section 21, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-069**;

      2.  The Northeast Quarter of Section 21, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-003**;

      3.  The Southeast Quarter of Section 21, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-004**; and

      4.  All of Section 19, Township 26 North, Range 16 West of the Gila and Salt River Base and Meridian – **APS 341-01-093**.

    C.    EB Acquisitions owns fee simple title to the following described real property in Mohave County, State of Arizona (hereinafter "*EB Acquisitions' Land*"):

      1.  All of Section 14, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-058**; and

      2.  All of Section 24, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-060**.

    D.    Kingman Farms Ventures III owns fee simple title to the following described real property in Mohave County, State of Arizona (hereinafter "*Kingman Farms Ventures III's Land*"):

      1.  All of Section 26, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-059**; and

      2.  All of Section 25, Township 26 North, Range 17 West of the Gila and Salt River Base and Meridian – **APS 341-05-063.**

    E.    Sun Pacific, Kingman Farms Ventures, and Kingman Farms Ventures III desire to grant to each other and to EB Acquisitions a non-exclusive perpetual access easement upon, over, under, and across those portions of Sun Pacific's Land, Kingman Farms Ventures' Land, and Kingman Farms Ventures III's Land, as set forth on Exhibit A attached hereto and incorporated herein by this reference, in order to provide roadway, utilities, vehicular and pedestrian access, ingress and egress and maintenance to Sun Pacific's Land, Kingman Farms Ventures' Land, Kingman Farms Ventures III's Land, and EB Acquisitions' Land.

## AGREEMENTS

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

    1.    Incorporation. The above Recitals are hereby incorporated and made a part hereof.

2.      Grant of Mutual Access Easement.  Sun Pacific, Kingman Farms Ventures, and Kingman Farms Ventures III hereby grant to each other and to EB Acquisitions, for the benefit of and appurtenant to Sun Pacific's Land, Kingman Farms Ventures' Land, EB Acquisitions' Land, and Kingman Farms Ventures III's Land, and as a burden upon Sun Pacific's Land, Kingman Farms Ventures' Land, and Kingman Farms Ventures III's Land, a perpetual, non-exclusive easement and right of way upon, over, across, and under a sixty-five (65)-foot-wide strip (the "*Easement Area*") of Sun Pacific's Land, Kingman Farms Ventures' Land, and Kingman Farms Ventures III's Land, as more particularly depicted on Exhibit A attached hereto and incorporated herein by reference (the "*Easements*"), for roadway, utilities, vehicular and pedestrian access, ingress and egress and maintenance as may be reasonably necessary to and for the benefit of Sun Pacific's Land, Kingman Farms Ventures' Land, EB Acquisitions' Land, and Kingman Farms Ventures III's Land, to and from Stockton Hill Road.

3.      Dominant and Servient Estates.  The properties benefitted as set forth in Section 2 above constitute the dominant estates, and the properties depicted on Exhibit A hereto burdened as set further forth in Section 2 above constitute the servient estates.

4.      Easements Run With Land.  This Easement Agreement and the Easements granted and conveyed hereby are perpetual and shall run with the land and, together with this Easement Agreement, inure to the benefit of and are binding on the successors and assigns of the respective Parties.

5.      The Parties' Use of Their Respective Properties.  Within the Easements, Sun Pacific can enjoy the use of Sun Pacific's Land, Kingman Farms Ventures can enjoy the use of Kingman Farms Ventures' Land, and Kingman Farms Ventures III can enjoy the use of Kingman Farms Ventures III's Land.  Each of Sun Pacific, Kingman Farms Ventures, and Kingman Farms Ventures III may grant other easements or licenses at the same locations (i.e., at Sun Pacific's Land, Kingman Farms Ventures' Land, and Kingman Farms Ventures III's Land, respectively) to the extent such other easements or licenses are not inconsistent with, and do not interfere with, the rights the Parties have granted to each other.  No improvement, building, fence, or other barrier that would unreasonably prevent or obstruct the purposes of the Easements granted hereby shall be erected or permitted within or across the Easements upon, over, under and across the Easement Area without the prior written consent of the Party or Parties adversely affected thereby.

6.      Relocation of the Easements.  Each Party (the "*Relocation Party*") reserves the right to unilaterally relocate any part of the Easements located on its servient estate(s) to another part of the Relocation Party's land; provided, however, that any relocated portion of the Easements shall:

a)      continue to keep the prior location of the Easements open and usable by all the Parties until such time as the relocation portion is open and usable by all Parties;

b)      avoid any sharp turns, circuitous or dogleg routes, or zig zags, or other design or location flaws that materially or adversely affect use of the Easements by any one or more of the Parties; and

3

     c)     not materially or adversely affect, impair or limit access to or use of utilities or utilities lines installed or constructed in the Easements Area prior to any such relocation.

Further, any relocated portion of the Easements shall continue to provide roadway, vehicular, pedestrian and utilities access, ingress, egress and maintenance without material diminishment or interference as reasonably necessary to access and use the dominant estates as set forth in Section 3 above.

     7.     Permanent Improvements. Unless otherwise agreed, any person or legal entity exercising any rights by virtue of this Easement Agreement who constructs, places, installs, maintains, repairs, replaces or improves roads, curbs, gutters, sidewalks and drainage systems (collectively, the *"Permanent Improvements")* within the Easements (such person or legal entity, an *"Improving Party"),* shall do so at its sole cost and expense, and in compliance with all applicable codes and municipal, county or state requirements. If an Improving Party, or a third party acting at the direction of or for the benefit of an Improving Party, damages property that is owned by another Party (such Party, the *"Affected Party"*), then that Improving Party shall repair or cause to be repaired any such damages, and shall be liable for such damages. The installation, maintenance, repair, replacement or improvement of any Permanent Improvements by any person or legal entity exercising any rights by virtue of this Easement Agreement shall not confer ownership thereof to such person or legal entity.

     8.     No Liens. No Party shall permit, or take any action that would result in, any lien being recorded against or otherwise attaching to any other Party's real property (whether such lien constitutes a priming lien, a *pari passu* lien, a junior lien, a mechanic's lien, or otherwise).

     9.     Compliance with Laws. The Parties shall comply with all applicable laws, ordinances, and regulations, including but not limited to all applicable regulatory, environmental, and safety requirements, during, and in connection with, their use and occupancy of the respective Easements.

     10.     Permits. Any person or legal entity desiring to exercise any rights pursuant to any of the Easements granted hereby shall, at its sole cost and expense, pay for all costs, fees and expenses relating to any governmental laws, regulations and/or permits pertaining to such use and exercise.

     11.     Indemnity. Any person or legal entity utilizing any of the Easements granted hereby shall indemnify, defend and hold harmless the person or legal entity holding title to the servient estate, including its managers, members, managing members, partners, shareholders, officers, directors, agents, employees and representatives from and against any and all claims, demands, losses, damages, expenses, or attorneys' fees and costs relating to, arising out of or in connection with the unauthorized exercise or use of the Easements granted herein.

     12.     No Public Dedication. Nothing in this Easement Agreement shall be deemed to be a gift or dedication of any portion of the servient estate to the general public or for any public purpose whatsoever. It is the intention of the Parties that the Easements granted hereby will be strictly limited to and for the purposes expressed herein. Each Party reserves the right to close off

4

any portion of the Easement Area located on its servient estate for such short period of time as may be necessary to prevent the acquisition of prescriptive rights by any third party, including the public at large.

13.     Termination.      The Easements granted hereby may be terminated by the written consent of all the Parties.

14.     Counterparts.  This Agreement may be executed in multiple counterparts, including signatures obtained by facsimile, through electronic mail, or by use of electronic signature technology, each of which shall be deemed an original and all, taken together, shall constitute one (1) and the same instrument.

15.     Defaults.  In the event any Party or Parties default in any of its or their obligations hereunder, the defaulting Party or Parties shall have fifteen (15) days after receipt of written notice of such default to cure any default of the defaulting Party or Parties.  After the expiration of any such period, the non-defaulting Party or Parties shall have all rights and remedies available to them under this Agreement or otherwise available at law or in equity including, without limitation, self-help as available or permitted under law.

16.     Access and Compliance with Applicable Law; Grant of License.  During the term of this Easement Agreement, each Party shall comply at its sole cost and expense with such Party's duties and obligations under this Easement Agreement and with all requirements, codes and ordinances of municipal, county, state, and federal authorities applicable to its use of and responsibilities concerning the Easements granted herein. Further, each Party hereby grants to the other Parties and their respective contractors, subcontractors, agents, representatives, managers, officers and employees a temporary license and right to enter into and upon that area of the servient estate that is not more than ten (10) feet to the side of the Easement Area for purposes of temporary maintenance, repair, installation of utilities, obtaining and exercising all permits, licenses and approvals and constructing adequate improvements for use of the Easements granted herein.

17.     Governing Law; Jurisdiction and Venue.  To the extent not preempted by federal law, this Easement Agreement shall be construed and interpreted under the laws of the State of Arizona without giving effect to principles of conflicts of law. The Parties further agree that the venue for any and all disputes and other matters relating to the interpretation and enforcement of this Easement Agreement or any ancillary document executed pursuant hereto shall be state or federal courts in Mohave County, Arizona, as applicable, and the Parties hereto agree to the jurisdiction and venue of the courts of said state to the exclusion of any other courts which otherwise may have had jurisdiction.

18.     Miscellaneous.  Failure of a Party to insist on the performance of any provision or exercise of any right hereunder shall not be construed as a waiver for the future of any such provision or right. No provision of this Easement Agreement shall be deemed to have been waived unless such waiver be in writing signed by each Party.  If any provision of this Easement Agreement or the application thereof to any person or circumstances shall to any extent be invalid, the remainder of this Easement Agreement or the application of such provision to persons or circumstances other than to those which it is held invalid, shall not be affected thereby.  Each provision of this Easement Agreement shall be valid and enforceable to the fullest extent permitted

5

by law. If a court of competent jurisdiction determines any provision to be invalid, it shall have the authority to amend such provision to the limited extent to make the same valid and enforceable. This Easement Agreement contains the entire agreement between the Parties pertaining to the subject matter hereof.

**IN WITNESS WHEREOF**, this Easement Agreement shall be dated and effective upon the date of the last signature below:

Dated this _____ day of _____, 2018.

SUN PACIFIC MARKETING COOPERATIVE, INC.,
a California corporation

By:_____
Name: Adam Smith
Its: Chief Financial Officer

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF LOS ANGELES      )

On the _____ of _____, _____, before me, the undersigned notary public, personally appeared Adam Smith, as Chief Financial Officer of Sun Pacific Marketing Cooperative, Inc., a California corporation, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument for its stated purpose.

WITNESS my hand and official seal.

_____
Notary Public

6

Dated this _____ day of _____, 2018.

<div style="margin-left: 30%;">

KINGMAN FARMS VENTURES, LLC,
a Nevada limited liability company

By: Truckee Springs Holdings, Inc.,
a Nevada corporation
Its: Manager

By: _____
Name: James M. Rhodes
Its: President

</div>

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CLARK          )

On the _____ of _____, _____, before me, the undersigned notary public, personally appeared James M. Rhodes, as President of Truckee Springs Holdings, Inc., a Nevada corporation, manager of Kingman Farms Ventures, LLC, a Nevada limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument for its stated purpose.

WITNESS my hand and official seal.

_____
Notary Public

7

Dated this _____ day of _____, 2018.

EB ACQUISITIONS, LLC,
a Nevada limited liability company

By: Truckee Springs Holdings, Inc.,
a Nevada corporation
Its: Manager

By: _____
Name: James M. Rhodes
Its: President

STATE OF NEVADA      )
                     ) ss.
COUNTY OF CLARK      )

On  the _____ of _____, _____, before me, the undersigned notary
public, personally appeared James M. Rhodes, as President of Truckee Springs Holdings, Inc., a
Nevada corporation, manager of EB Acquisitions, LLC, a Nevada limited liability company, who
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument, and acknowledged to me that he executed the same in his authorized
capacity, and that by his signature on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument for its stated purpose.

WITNESS my hand and official seal.

_____
Notary Public

8

Dated this _____ day of _____, 2018.

> KINGMAN FARMS VENTURES III, LLC, a Nevada
> limited liability company
>
> > By: Province Consulting, LLC,
> > a Nevada limited liability company
> > Its: Manager
> >
> > > By:  PBH Family, L.P., a Managing Member
> > >
> > > By: _____
> > > Name: Paul S. Hamilton, A General Partner

STATE OF NEVADA          )
                              ) ss.
COUNTY OF CLARK       )

On the _____ of _____, _____, before me, the undersigned notary public, personally appeared Paul S. Hamilton, as a General Partner of PBH Family, L.P., a Managing Member of Province Consulting, LLC, a Nevada limited liability company, as Manager of Kingman Farms Ventures III, LLC, a Nevada limited liability company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument for its stated purpose.

WITNESS my hand and official seal.

_____
Notary Public

9

**EXHIBIT "C"**

**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street, Suite 100
Las Vegas, Nevada 89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Proposed* Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | ) | CASE NO. 18-10180-LED |
|---|---|---|
| | ) | CHAPTER 11 |
| KINGMAN FARMS VENTURES, LLC, | ) | |
| a Nevada limited liability company, | ) | Hearing Date: |
| | ) | Hearing Time: |
| Debtor. | ) | |
| | ) | |

## ORDER AUTHORIZING DEBTOR TO VOTE TO ACCEPT PLAN OF ORGANIZATION FOR YUCCA LAND COMPANY, LLC

The Court, having reviewed and considered the *Motion for Order Authorizing Debtor*

*to Enter Into An Agreement To Grant An Easement Over Debtor's Real Property* [Docket No.

___] (the "Motion")[1], filed by Debtor on January __, 2018, (ii) the *Declaration of James Rhodes* filed in support of the Motion, (iii) the papers and pleadings on file in above-captioned Chapter 11 Case, and (iv) the arguments of counsel presented at hearing, with Nedda Ghandi, Esq., of Ghandi Deeter Blackham, appearing as proposed counsel on behalf of Debtor; this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and with venue of this Chapter 11 Case and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); the Court hereby finds that notice of the Motion was good and sufficient as provided therein and under the circumstances, that good cause exists to approve the Motion, and with all other findings set forth in the record at the hearing noted above incorporated herein, pursuant to Bankruptcy Rule 7052.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED in all respects.

2.      Pursuant to 11 U.S.C. §§ 105(a) & 363(b), Debtor shall be and is hereby authorized to enter into the Easement Agreement.

3.      The terms of this Order shall be immediately effective and enforceable upon its entry.

Prepared and Respectfully Submitted by:

**GHANDI DEETER BLACKHAM**

By  /s/ Nedda Ghandi_____
Nedda Ghandi, Esq.
Nevada Bar No. 11137
725 South 8th Street, Suite 100
Las Vegas, Nevada 89101
*Proposed* Attorney for Debtor

---

1 All capitalized terms used herein and not defined are as defined in the Motion.